In Suk CHANG, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 03 CV 1212(NG).

United States District Court, E.D. New York.

Feb. 20, 2004.

Michael S. Kimm, Hackensack, NJ, for plaintiff.

Pamela Chen, for defendant.

## *ORDER*

GERSHON, District Judge.

Petitioner In Suk Chang brings this motion, pursuant to 28 U.S.C. § 2255, to vacate his guilty plea and dismiss the indictment against him. Petitioner claims that federal jurisdiction is lacking. Additionally, petitioner makes numerous claims regarding his plea allocution. He claims that the allocution failed to elicit a sufficient factual basis to establish the charges. He also claims that the plea was not knowing and voluntary because the court failed to explain adequately all elements of the conspiracy charge, the requirement for a unanimous verdict, and the reasonable doubt standard during the plea allocution. Petitioner further claims his plea was not knowing and voluntary because he received erroneous advice from his trial counsel regarding the maximum prison sentence he faced. Finally, petitioner claims ineffective assistance of counsel.

This court finds that petitioner's claims are without merit. His motion under 28 U.S.C. § 2255 is therefore denied.

## Background

On May 31, 2000, on the morning he was scheduled to begin trial, petitioner pled guilty to two violations of the Hobbs Act, 18 U.S.C. § 1951. The charges were based on incidents of threats, violence and harassment by which petitioner and his co-defendants sought to ensure that various business owners purchased liquor from petitioner's unlicensed liquor distribution company and referred customers to petitioner's car service. In one such incident, petitioner and his co-defendants were captured on videotape beating an employee of Northern Northern restaurant, in Queens, New York, for twenty minutes, and telling the employee he should have "called for the car service."

Petitioner was sentenced to 121 months in prison. Petitioner timely appealed his sentence, challenging the court's denial of a downward departure for acceptance of responsibility under the sentencing guidelines and the decision to sentence him to the maximum guideline sentence. Petitioner also contested the finding that the victim suffered serious bodily harm, thus warranting a four-level enhancement. He did not challenge his conviction. The Second Circuit affirmed the sentence on November 21, 2001. *United States v. Lee et al.*, 25 Fed.Appx. 20 (2d Cir.2001).

## Jurisdiction

Federal jurisdiction is predicated on the effect petitioner's actions had on interstate commerce. A showing of a very slight effect on interstate commerce is sufficient to support Hobbs Act jurisdiction. *United States v. Perrotta*, 313 F.3d 33, 36 (2d Cir.2002); *United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir.1981). During the plea allocution, the government proffered that the businesses that were the victims of petitioner's extortionate conduct were engaged in interstate commerce. Specifically, government counsel stated that the owner of the restaurant targeted by the petitioner was prepared to testify that a number of products used in the restaurant were manufactured outside New York and that the restaurant served customers who came from New Jersey and Connecticut. Transcript of Pleading, May 31, 2000, at 27–28 ("Tr."). The government's proffer at the plea allocution establishes a proper basis for federal jurisdiction.

In a Supplemental Memorandum dated April 21, 2003, petitioner argues that the Second Circuit's decision in *United States v. Perrotta*, 313 F.3d 33 (2d Cir.2002), and the Supreme Court's decision in *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), buttress his claim that there

was no federal jurisdiction in this case. In *Perrotta,* the Second Circuit held that, where the only connection to interstate commerce was that the victim of extortive activity was employed by a business that engages in interstate commerce, there was insufficient effect on interstate commerce under the Hobbs Act. *Perrotta,* 313 F.3d at 36. In *Scheidler,* a civil RICO suit against anti-abortion protestors that alleged acts of extortion in violation of the Hobbs Act, the Court held that the Hobbs Act requires that "a person must 'obtain' property from another party to commit extortion," which requires "not only the deprivation but also the acquisition of property." *Scheidler,* 537 U.S. at 404, 123 S.Ct. 1057.

Petitioner's reliance on these cases is misplaced. *Perrotta* itself makes clear that some instances of extortion of an employee of a business engaged in interstate commerce will support Hobbs Act jurisdiction and cites as an example a case where "the victim was targeted *because of her status as an employee* at a company participating in interstate commerce." *Perrotta,* 313 F.3d at 37–38 (citing *United States v. Diaz,* 248 F.3d 1065, 1089 (11th Cir.2001)) (emphasis added). That is precisely the scenario in this case. As he admitted at his plea allocution, petitioner threatened an employee of Northern Northern Restaurant because he wanted the *restaurant* to use his car service. *See* Tr. at 25–27.

■ Any argument based on *Scheidler* is precluded by petitioner's guilty plea. Given a proper plea allocution (see below), petitioner has waived the right to challenge the factual issue of whether he "obtained" property. *See United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (noting that a guilty

plea "is an admission that he committed the crime charged against him") (citation omitted); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("a guilty plea is an admission of all the elements of a formal criminal charge"). To the extent that the contention is that the indictment itself is insufficient because it does not charge petitioner with "obtaining" property, this argument fails. The indictment specifically charged petitioner with engaging in extortive acts in order to require certain business owners to purchase liquor from petitioner and to refer customers to a car service he controlled. Such purchases and referrals were the mechanisms by which he sought to obtain property.

### Factual Bases of Petitioner's Guilty Plea

Former Rule 11(f)[1] of the Federal Rules of Criminal Procedure requires the court to satisfy itself that there is a factual basis for the guilty plea before accepting the plea. The rule requires that the court assure itself "simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher,* 108 F.3d 1513, 1524 (2d Cir.1997). This inquiry focuses not on the factual sufficiency or persuasiveness of the government's evidence but rather on the relationship between the law and the acts the defendant admits to having committed. *Id.* at 1529.

■ Petitioner's plea allocution provides clear factual bases for his plea of guilty to the offenses charged. At the allocution, petitioner admitted that he had "threatened the employee" of the restaurant that was the target of the extortionate conduct

---

1. Rule 11 was amended in 2002. The language requiring the court to determine that

there is a factual basis for a guilty plea is now found in subsection (b)(3).

"to use [his] car service." Tr. at 25. When asked if he had threatened the employee with force, petitioner responded "yes." *Id.* at 27. Petitioner, relying on *United States v. Andrades,* 169 F.3d 131 (2d Cir.1999), and *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), argues this was merely a "mimicking" response to a leading question from the court and thus is inadequate.[2] However, the court did much more than merely elicit a single affirmative response from petitioner, as was the case in *Andrades.* Here, after reading the counts of the indictment and explaining the charges to petitioner, the court repeatedly inquired whether petitioner understood the charges and elicited an explanation of petitioner's conduct from petitioner in his own words. *See* Tr. at 12–27. The plea allocution was ample to establish the charge of Hobbs Act extortion.

■ To the extent petitioner is arguing that he did not in fact threaten the business and that the government thus could not prove a Hobbs Act violation, this challenge to the sufficiency of the evidence against him is waived. "[A] defendant who pleads guilty unconditionally admits his guilt and waives his right to appeal all nonjurisdictional contentions." *Maher,* 108 F.3d at 1528. Petitioner retains the right to argue that the court failed to elicit a factual basis for his plea in violation of Rule 11, but, as noted above, this inquiry does not focus on the factual sufficiency of the government's case. *See id.* at 1529.

Petitioner also challenges the factual basis of his plea to the conspiracy charge on the ground that the court inadequately explained the charge by failing to describe petitioner's particular co-conspirators and the specific object of the illegal agreement. This argument overlaps with petitioner's "knowing and voluntary" claim, discussed below. It is enough to note here that petitioner was read the language of the indictment charging conspiracy, including the specific names of the co-defendants with whom he had conspired, during the allocution. Petitioner admitted that he had in fact agreed with his three co-defendants to threaten a restaurant employee so that the restaurant would use his car service. *Id.* at 26–27. Thus, there was a sufficient factual basis for the conspiracy charge.

**Knowing and Voluntary**

Petitioner claims the plea was not knowing and voluntary for four reasons: 1) the court did not adequately explain the elements of the conspiracy charge; 2) there was no explanation of the unanimous verdict requirement; 3) there was an inadequate statement of the reasonable doubt standard; and 4) the plea was coerced by counsel.

■ Petitioner is procedurally barred from challenging the voluntary and knowing nature of his guilty plea in this proceeding. These may be attacked on collateral review only if they are first challenged on direct review. *Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604,

**2.** Petitioner also argues that he, like Mr. Andrades, consistently disputed the nature of his involvement in the crime before and during the sentencing hearing. However, petitioner's "dispute" does not concern the underlying factual basis of the crime. Petitioner acknowledged at the plea proceeding that he did, in fact, brutalize the Northern Northern employee and threaten him. Rather, petitioner argues that the threat did not constitute extortion and that his acts did not affect interstate commerce. Petitioner makes these claims despite the fact that he declined an opportunity to withdraw his guilty plea after questioning the threat and interstate commerce requirements of the crimes charged. As discussed below, petitioner's factual allocution was sufficient and any additional factual arguments have been waived by his plea of guilty. *See Maher,* 108 F.3d at 1528–29.

140 L.Ed.2d 828 (1998). Once a petitioner fails to assert this claim on direct review, "he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *DeJesus v. United States,* 161 F.3d 99, 102 (2d Cir.1998). Petitioner did not contest the voluntariness of his plea on appeal and has not shown any cause or prejudice justifying his failure to do so.

■ Moreover, his claim that his plea was not knowing and voluntary is without merit. The record clearly shows that petitioner's plea was both knowing and voluntary. At the plea allocution, petitioner was read both counts of the indictment with which he was charged and to which he was pleading guilty, consisting of the conspiracy count and the substantive violation of the Hobbs Act. The conspiracy charge, which the court read to petitioner, included the specific names of his co-defendants. Tr. at 13. The language read from the indictment also specifically identified the object of the conspiracy, by stating that petitioner "conspire[d] to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, by extortion, specifically, by obstructing the rights of certain business owners to contract freely by requiring these business owners and their representatives, through the wrongful use of actual and threatened force, violence, and fear, to purchase liquor from defendants and refer customers to a car service controlled by defendants." *Id.* This court explained to the petitioner that a "conspiracy is an illegal agreement or, put another way, an agreement to do something illegal." *Id.* Petitioner indicated that he understood the nature of the conspiracy charge, *id.* at 13–14, and entered a plea of guilty to that charge. *Id.* at 24–25.

The record also demonstrates that petitioner received a fair and adequate explanation of his right to a jury trial and the reasonable doubt standard. *See id.* at 21–23. The court explained,

> If you plead not guilty, you are entitled to a speedy and public trial by jury with the assistance of counsel, and if you cannot afford an attorney, an attorney will represent you free of cost.... At a trial you are presumed to be innocent and the government must overcome that presumption and prove you guilty by competent evidence beyond a reasonable doubt. Otherwise, you are not convicted.

*Id.* at 21–22. Petitioner's argument that this explanation was inadequate because it failed to advise him that the government would have to prove "each and every element of the charges beyond a reasonable doubt" is meritless. Rule 11 by its terms does not require such an explanation. The one case petitioner cites in support of this argument, *United States v. Pinckney,* 85 F.3d 4 (2d Cir.1996), is inapposite. In *Pinckney,* the Second Circuit reversed a conviction under the "chop shop" statute on direct appeal because the government had failed to prove at trial every element of the crime charged. *Pinckney* has nothing to say about the requirements of Rule 11, and petitioner cites no other authority to support this claim.

Regarding petitioner's argument that his plea was not voluntary because the court did not explain the unanimous verdict requirement, petitioner cites no case from the Supreme Court or the Second Circuit that requires an explanation that the jury must reach a unanimous verdict, and Rule 11 by its terms does not require such explanation. Furthermore, the one case petitioner does cite, *United States v. Gastelum,* 16 F.3d 996 (9th Cir.1994), does not stand for this proposition. In *Gaste-*

*lum,* the Ninth Circuit held that a district court's failure to inform a defendant of *"any* constitutional rights" before accepting his guilty plea was a violation of Rule 11. *Gastelum,* 16 F.3d at 998. In reaching this holding, the court recounted in a footnote the various constitutional rights the district judge eventually described to the defendant when he belatedly instructed him on the rights he waived by pleading guilty. This list included the right to receive a unanimous verdict, but there is no indication the court rested its holding on the judge's failure to inform the defendant that he waived this particular right. *See id.* at 998 n. 2.

Petitioner also claims that his plea was not knowing and voluntary because he pled guilty based on his attorney's definition of extortion, even though he believed he had engaged in simple assault. However, petitioner's counsel's definition of extortion was correct. The conduct petitioner admitted having engaged in properly constitutes the federal crime of Hobbs Act extortion. Therefore this claim fails.

■ Petitioner also claims that his guilty plea was effectively coerced because he received erroneous advice from counsel concerning the maximum sentence available for the offenses charged. To the extent this alleged coercion has a bearing on the effectiveness of counsel's assistance, it is analyzed below. Regarding the voluntariness of petitioner's plea, petitioner asserts that his attorney told him "that if he did not plead guilty, he would receive a 'twenty year prison term,' whereas, if he did plead guilty, he will 'receive a ten year term.'" Petitioner also asserts his attorney told him he would receive "double the prison term" if he were found guilty at trial.[3]

Petitioner does not submit any affidavits to support this claim, although he does proffer that his brother "would testify" that petitioner's attorney made these statements on the morning petitioner entered his guilty plea.[4] Even accepting for purposes of this motion that the attorney made such statements, petitioner's strained attempt to characterize them as coercive fails. Petitioner's attorney was simply advising his client of the possible consequences of going to trial versus pleading guilty. Petitioner was charged with two violations of the Hobbs Act, each of which carried a statutory maximum sentence of twenty years. Correctly reporting the maximum sentence allowed under the statute is not coercive; it is appropriate professional conduct. The sentence petitioner ultimately received after pleading guilty was 121 months, or just over ten years, which is in accord with the estimate petitioner claims he received from counsel.

■ Moreover, the court independently explained that the maximum sentence petitioner faced was twenty years for each count to which he was pleading guilty. Tr.

---

3. Petitioner's claims about what he was told by his attorney regarding a possible sentence are somewhat inconsistent and ambiguous. At one point he states that the attorney told him he could be sentenced to "twenty years." Later he states that the attorney told him he would get "double" the time set forth in the statute, and apparently interprets this to mean forty years.

4. The government submits a letter from petitioner's trial counsel, Robert Feldman, recounting what he told petitioner: "I told him that in my opinion, due to the absolute clarity of the tape depicting a long brutal assault on the victims, corroborated by the witnesses, most of whom I had interviewed with Mr. Kim, Esq., he would be convicted after trial and would receive a longer sentence than if he were to plead guilty. I told him that after a trial it would be likely that the Court would sentence him to up to 20 years, (not 40 years)." Government's Memorandum in Opposition to Section 2255 Petition, Exhibit E.

at 15. Any possible confusion allegedly engendered by petitioner's trial counsel was therefore resolved prior to petitioner's guilty plea. The court also asked petitioner whether he had discussed the sentencing guidelines and the possible range of sentencing with his attorney, and petitioner answered "yes." Tr. at 18, 20. Finally, at the plea allocution, the court asked petitioner whether anyone had threatened or forced him to plead guilty and petitioner answered "no." Tr. at 25. These "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The court thus finds that petitioner's plea was both knowing and voluntary.

### Ineffective Assistance of Counsel

■■■ In order to succeed on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–99, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable profes-

sional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052. In the context of a guilty plea, the second prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). No such showing has been made here.

■■■ Petitioner argues that he received ineffective assistance of counsel because counsel suggested that a guilty plea would result in a lower sentence than a verdict of guilty at trial, even though at the time petitioner pled guilty on the morning of trial the only possible difference in sentence was a potential downward adjustment for acceptance of responsibility. Petitioner argues this was unlikely because of the late date of his plea. Far from being ineffective or coercive, however, petitioner's counsel was in fact correct. Although ultimately petitioner did not receive a downward adjustment for acceptance of responsibility, that was a result of his conduct after the plea.[5] At the time he plead

---

5. At petitioner's sentencing on January 10, 2001, the court noted:

> Once again, as he has done before, this defendant claims that he is really only guilty of a minor assault and not the federal crime of extortion. Previously faced with letters making such claims I held a hearing inviting the defendant to tell me whether he wished to move to withdraw his plea. On September 22nd, he reaffirm [sic] at that hearing that he did not wish to withdraw his guilty plea and that he plead guilty voluntarily.

In a September 25th letter to the Court, the defendant confirmed this. None the less I have continued to receive contrary correspondence.... I deny Mr. Chang any adjustment for acceptance of responsibility. Ordinarily a guilty plea evidences acceptance, but Application Note Three says that evidence of a plea may be outweighed by conduct of the defendant, which is inconsistent with such acceptance of responsibility.... The plea was given on the day of trial, that is not saving any prosecutorial resources, he, therefore, at a minimum is

guilty, there was still a possibility that he would get credit for accepting responsibility.

Petitioner also argues that he received ineffective assistance of counsel because his attorney provided him with no discussion or analysis of sentencing guidelines. However, at the plea allocution, the court asked petitioner whether he had discussed the sentencing guidelines and the possible range of sentencing with his attorney, and petitioner answered "yes." Tr. at 18, 20.

During the allocution, petitioner stated he had discussed his plea with counsel and that he was satisfied with counsel's representation. Tr. at 9. Prior to sentencing, petitioner specifically declined an opportunity to withdraw his guilty plea and proceed to trial. Petitioner fails to demonstrate that, absent counsel's alleged errors, he would have insisted on proceeding with a trial rather than pleading guilty. Moreover, given the strength of the evidence against petitioner, which included a twenty-minute-long videotape showing a brutal beating of a restaurant employee in which petitioner's co-defendant is heard demanding to know why the restaurant was not using their car service, it cannot be said that counsel's advice to plead guilty was not a reasonable strategy. Accordingly, petitioner's claim of ineffective assistance of counsel is denied.

### Conclusion

For the reasons stated above, petitioner's motion under Section 2255 is denied.

SO ORDERED.

.

not entitled to the third point. More importantly, he now either denies or grossly minimizes his role in a violent extortion.

Transcript of Sentencing, January 10, 2001, at 46–47.